IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :    CRIMINAL ACTION
                          :    NO. 07-361
     v.               :
                          :
DONALD DOUGHERTY        :

**FILED**

APR 03 2008

M E M O R A N D U M

**MICHAEL E. KUNZ, Clerk**
**By_____Dep. Clerk**

EDUARDO C. ROBRENO, J.

April 2, 2008

I.   BACKGROUND

       Defendant Donald Dougherty is charged in a 100-count indictment with various offenses relating to his operation of Dougherty Electric, Inc., a corporation of which he is the sole owner.  The offenses arise primarily from Dougherty's alleged orchestration of a cash-payroll scheme at Dougherty Electric, through which he allegedly embezzled monies that otherwise would have been contributed to employee benefit plans and evaded payment of federal payroll taxes.  Dougherty is also charged with falsely designating personal expenses as business deductions on his income tax returns, making unlawful payments to a union official, health-care fraud, and bribery of a bank official.

       In January 2006, agents from the Federal Bureau of Investigation, the Internal Revenue Service, and the Department of Labor who were investigating Dougherty sought to conduct a search of the premises at 123 Pierce Street in Philadelphia, Pennsylvania.  On 123 Pierce Street stands a three-story red

**ENTERED**
APR 03 2008
**CLERK OF COURT**

brick building that housed not only Dougherty's personal
residence, but also the headquarters of Dougherty Electric.   In
an effort to obtain a search warrant, FBI Special Agent Kathleen
O'Hanlon executed an affidavit seeking to search "the premises
located at 123 Pierce Street, Philadelphia, Pennsylvania,
19148[;] [t]he primary residence and business location of DONALD
DOUGHERTY/DOUGHERTY ELECTRIC, INC."   Deft.'s Mot. to Suppress,
Ex. 2 [hereinafter "Affidavit"].   On January 27, 2006, Magistrate
Judge M. Faith Angell approved the issuance of a warrant to
search 123 Pierce Street, finding probable cause that evidence of
commission of a crime would be found therein.   See id. Ex. 1.


A.   The January 27, 2006 Warrant

The warrant describes the premises to be searched as
"123 Pierce Street, Philadelphia PA 19148," and supplies the
structural details of the premises, along with photographic
images.   Id. at 1 & Attachment A.[1]   The warrant also includes an
extensive description of the items to be seized, providing 24
categories of documentary items, and 7 categories of computers

---

[1]      Although the warrant itself does not contain any
particularized information, the warrant incorporates by reference
Special Agent O'Hanlon's affidavit, which includes a detailed
description of the places to be searched and items to be seized.
See United States v. Johnson, 690 F.2d 60, 64 (3d Cir. 1982)
("When a warrant is accompanied by an affidavit that is
incorporated by reference, the affidavit may be used in
construing the scope of the warrant.").

and related items.  Id. Attachment B.

      The affidavit states that O'Hanlon is an FBI Special
Agent with over 20 years of experience who is investigating
Dougherty, "owner/operator" of Dougherty Electric for, inter
alia, "theft or embezzlement from an employee benefit fund,"
"making unlawful payments to a union official," "utilizing
[company] monies for personal use and taking business deductions,
and, thereby evading income taxes," and "filing false income tax
returns." Id. ¶ 2.  The bases for the allegations include
personal observations, subpoenaed records, interviews with
confidential informants and cooperating witnesses, and physical
and electronic surveillance.

      The affidavit avers that Dougherty Electric is an S
Corporation[2] solely owned by Dougherty and operated from his home
at 123 Pierce Street.  Id. ¶ 4.  In support of this averment, the
affidavit states that Dougherty allegedly "relocated the
operations of [Dougherty Electric] from its former location at
142-50 Morris Street, Philadelphia, PA to the basement of
[Dougherty's] residence at 123 Pierce Street," as evidenced by
information from a cooperating witness and surveillance of
persons moving office furniture and file storage from the Morris

_____

    [2]    A corporation under chapter S of the Internal Revenue
Code, or S Corporation, is generally exempt from federal income
tax, and instead passes through its profits to shareholders, each
of whom pays taxes on his share of those profits on his Form 1040
at individual tax rates.  See 26 U.S.C. §§ 1363, 1366.

-3-

Street address to the Pierce Street address.  Id. ¶ 6.  In
addition, a confidential informant, alleged to be accurate and
reliable, stated that Dougherty "is operating his business from
his home."  Id.  The affidavit concludes that there is "probable
cause to believe that [Dougherty] is a sole proprietor,
conducting personal and business matters at his residence at 123
Pierce Street, Philadelphia, PA."  Id.

        The affidavit goes on to connect the premises at 123
Pierce Street to the offenses alleged.  With regard to the cash-
payroll scheme, the affidavit avers that an officer of Dougherty
Electric made a large cash withdrawal from an account that had
been regularly drawn upon in large amounts, brought the cash to
"the vicinity of 123 Pierce Street," and "entered [Dougherty's]
residence."  Id. ¶ 15.  Additionally, after describing at length
the various charges of tax evasion (cash-payroll scheme) and
filing false tax returns (improper business deduction of personal
expenses), the affidavit states that "the items purchased with
the monies from [Dougherty Electric]'s general business account
and/or evidence pertaining to the transactions may be found at
the residence of [Dougherty] at 123 Pierce Street, Philadelphia,
PA, and in the basement of the residence."  Id. ¶ 45.  The
affidavit also states that "individuals and businesses typically
maintain books and records where they are readily available,
i.e., at their homes and places of business" and "where the

-4-

individual has access to a computer." Id. ¶ 46.

B.   Execution of the Warrant

On January 28, 2006, Special Agent O'Hanlon and a team
of agents executed the warrant.  The agents conducted an
extensive search of the premises at 123 Pierce Street, beginning
in the basement and proceeding upwards.  The search of the
basement revealed the operations center of Dougherty Electric,
including files, computers, and office equipment.  The search of
the remainder of the building revealed another office adjacent to
Dougherty's master bedroom, which also contained files relating
to Dougherty Electric.

In addition to the business records of Dougherty
Electric, the agents searched throughout the home for certain of
Dougherty's personal items.  For instance, because Dougherty is
alleged to have improperly characterized home renovation expenses
as business deductions, the team searched for evidence of these
renovations, which included furniture, countertops, cabinets, and
flooring.  In addition, Dougherty is alleged to have purchased
personal goods and improperly deducted the expenses as business
expenses.  The team searched for evidence of these purchases as
well, which included jewelry, electronics, sports equipment, and
the accompanying receipts.

The search resulted in the seizure of 29 boxes of

-5-

documents and other materials, and 8 computers and related items.
The search team took photographs of all rooms that were searched.

C.    Procedural Posture

Dougherty now moves to suppress all evidence seized
pursuant to the January 27, 2006 warrant, arguing that the
warrant lacked particularity and the search exceeded the scope
authorized by the warrant.  After the parties each submitted
written memoranda to the Court, a suppression hearing was held on
March 27, 2008.  At the hearing, the parties presented oral
argument.  In addition, the parties were afforded the opportunity
to present evidence, and testimony was elicited from Special
Agent O'Hanlon.

II.  PARTICULARITY OF THE WARRANT

A.    The Particularity Requirement

The Fourth Amendment provides that "no Warrants shall
issue, but upon probable cause, supported by Oath or affirmation,
and particularly describing the place to be searched, and the
persons or things to be seized."  Const. amend IV.

The "particularity" requirement is designed to prevent
the issuance of "general warrants" that authorize "a general,
exploratory rummaging in a person's belongings."  United States
v. $92,422.57, 307 F.3d 137, 149 (3d Cir. 2002) (quoting Coolidge

-6-

v. New Hampshire, 403 U.S. 443, 467 (1971)).  Evidence obtained

pursuant to a warrant that does not comply with the Fourth

Amendment's particularity requirement may be excluded from

evidence at trial under the exclusionary rule.  United States v.

Leon, 468 U.S. 897, 906 (1984).


     B.    The Good Faith Exception to the Exclusionary Rule

        Even where a warrant violates the Fourth Amendment's

particularity requirement, suppression of evidence pursuant to

the exclusionary rule "is inappropriate when an officer executes

a search in objectively reasonable reliance on a warrant's

authority." $92,422.57, 307 F.3d 137 at 145 (quotation omitted)

(noting that "there is nothing to deter" when an officer acts in

good faith reliance on a warrant).[3]

        The relevant inquiry in determining good faith reliance

is "'whether a reasonably well trained officer would have known

that the search was illegal despite the magistrate judge's

---

[3]    If a motion to suppress "does not present a Fourth Amendment argument that should be decided in order to provide instruction to law enforcement or to magistrate judges," the Court may "turn 'immediately to a consideration of the officers' good faith.'" $92,422.57, 307 F.3d at 145 (quoting Leon, 468 U.S. at 925).  The parties agree that the issues presented here do not involve such arguments.  Accord id. (holding that "probable cause and particularity arguments" need not be decided in order to provide instruction to law enforcement or magistrate judges (citing United States v. Satterwhite, 980 F.2d 317, 320 (5th Cir. 1992))).  Thus, the Court addresses the good faith exception before addressing Dougherty's arguments on their merits.

authorization.'" <u>United States v. Hodge</u>, 246 F.3d 301, 307 (3d

Cir. 2001) (alteration omitted) (quoting <u>Leon</u>, 468 U.S. at 922

n.23).  In most cases, the good faith showing is not a difficult

one for the Government to make: "The mere existence of a warrant

typically suffices to prove that an officer conducted a search in

good faith and justifies application of the good faith

exception." <u>Id.</u> at 307-08.

        In four "narrow situations," however, the good faith

exception to the exclusionary rule will not apply:

>    (1) when the magistrate judge issued the warrant in
>    reliance on a deliberately or recklessly false
>    affidavit;
>
>    (2) when the magistrate judge abandoned his judicial
>    role and failed to perform his neutral and detached
>    function;
>
>    (3) when the warrant was based on an affidavit so
>    lacking in indicia of probable cause as to render
>    official belief in its existence entirely unreasonable;
>    or
>
>    (4) when the warrant was so facially deficient that it
>    failed to particularize the place to be searched or the
>    things to be seized.

<u>Id.</u> at 146 (quotation omitted).


        C.    <u>Discussion</u>

        Dougherty argues that the January 27, 2006 warrant was

facially deficient in its failure to particularize the place to

be searched and things to be seized, and that it was based on an

affidavit fatally lacking in indicia of probable cause.

-8-

The questions of whether the particularity of a warrant is facially deficient and whether a warrant lacks indicia of probable cause are determined by using an objective standard. See Hodge, 246 F.3d at 309 ("[An agent's] subjective belief regarding the sufficiency of the evidence is irrelevant.  The Supreme Court has emphasized that the good faith exception requires objectively, not subjectively, reasonable conduct.").

### 1.   Particularity

Dougherty argues that the warrant is facially deficient because it failed to particularize the things to be seized by authorizing a limitless search of virtually every item in his home and office.  Dougherty is incorrect.

"The Fourth Amendment does not prohibit searches for long lists of documents or other items provided that there is probable cause for each item on the list and that each item is particularly described."  $92,422.57, 307 F.3d 137 at 148. Moreover, when an investigation concerns a complex series of offenses, the Government is allowed a degree of latitude in defining the categories of items to be searched.  See United States v. Yusuf, 461 F.3d 374, 395 (3d Cir. 2006) ("[T]he government is to be given more flexibility regarding the items to be searched when the criminal activity deals with complex financial transactions."); United States v. Am. Investors of

-9-

Pittsburgh, Inc., 879 F.2d 1087, 1106 (3d Cir. 1989) ("Given the complex nature of a money-laundering enterprise, we cannot say that the categories over described the extent of the evidence sought to be seized.").

In American Investors, the Third Circuit upheld a warrant authorizing the search of "twenty-three categories of specifically delineated records and the seizure of other documents and items considered to be fruits, instrumentalities and/or evidence of criminal activity." 879 F.2d at 1093. The Court upheld the warrant against a particularity challenge, holding that, "given the range of information required to unravel the [money] laundering scheme and the extent of participation by the parties, the warrant was as specific as the circumstances allow." Id. at 1106; see also Yusuf, 461 F.3d at 379 ("[T]he warrant does not fail as an unconstitutional general warrant. The listing of the corporate items to be searched in the warrant application was not unconstitutionally overbroad, particularly considering this Court's repeated pronouncements to give greater flexibility in making the probable cause determination in the context of large-scale, document-intensive corporate offenses.").

Dougherty relies on United States v. Leary, 846 F.2d 592 (10th Cir. 1988), in an attempt to distinguish this case from American Investors. In Leary, the warrant's description of the

-10-

things to be seized was limited to the following:[4]

> Correspondence, Telex messages, contracts, invoices,
> purchase orders, shipping documents, payment records,
> export documents, packing slips, technical data,
> recorded notations, and other records and
> communications relating to the purchase, sale and
> illegal exportation of materials in violation of the
> Arms Export Control Act, 22 U.S.C. 2778, and the Export
> Administration Act of 1979, 50 U.S.C. App. 2410.

Id. at 594.  The Court held that the warrant was facially

deficient because its "absence of any limiting features" meant

that it encompassed "virtually every document that one might

expect to find in a modern export company's office."  Id. at 601

n.15, 602, 609.

        The warrant in this case is markedly different from the

warrant in Leary.  Instead of a single paragraph with a generic

statutory reference appended, the warrant here breaks the items

to be seized down into 24 particularized categories of

documentary evidence and 7 categories of computer-related

evidence.  See Affidavit, Attachment B.

        Dougherty has not pointed to a single paragraph in the

list of items seized that is deficient in a manner similar to the

generic items listed in Leary.  To the contrary, each paragraph

of the warrant here is highly specific and particularized.  Three

---

        [4]    In Leary, the affidavit accompanying the warrant
contained a more particularized description, but the Court held
that the affidavit could not cure the warrant's deficiency
because it was not incorporated by reference in the warrant or
attached the warrant.  846 F.2d at 603.  Here, the affidavit is
both incorporated by reference and attached to the warrant.

representative examples are set forth below:

> All documents relating to communications concerning
> International Brotherhood of Electrical Workers
> ["IBEW"] Local Union 98 Pension Plan ("the Plan") and
> Collective Bargaining Agreement, including, but not
> limited to communications concerning the Plan between,
> or among, [Dougherty Electric] or any of its agents or
> representatives and any of the following: any trustee
> of the Plan, any official of [Dougherty Electric], any
> plan official, fiduciary, or service provider.
>
> . . .
>
> All records relative to the personal use of any
> business asset, including cash or its equivalent, of
> [Dougherty Electric] by [Dougherty], his family, and/or
> any non-employee.
>
> . . .
>
> Any and all tax returns and supporting tax
> documentation including Federal, state or local
> individual and business tax returns, filed and unfiled,
> all Forms W-2, W-3, W-4 and 1099, filed and unfiled;
> and any supporting work papers, financial statements,
> audit/review/compilation reports, summary sheets, and
> analyses used in the preparation of the individual and
> business tax returns and Forms W-2, W-3, W-4 and 1099
> relating to [Dougherty] and [Dougherty Electric], for
> the period January 2000 through the present.

Affidavit, Attachment B, ¶¶ 1.B, 1.R, 1.W.

        The warrant contains no generic and unspecified
references to records that any business might have; rather the
categories of items are tailored to specific and relevant aspects
of Dougherty Electric's business.  Dougherty's argument that the
warrant had no limitations on the items to be seized is belied by
the specificity of the warrant's language.  The warrant was
limited in at least three respects: 1) it specifically delineated

-12-

the type (and sub-type) of document or item sought, 2) it limited the relevant time period from January 2000 to January 27, 2006, and 3) it generally limited the items to those relating to Dougherty, Dougherty Electric, and the IBEW union.[5]

Thus, the January 27, 2006 warrant is distinguishable from the general warrant in Leary.[6]  Considering the highly complex nature of this case, which was commenced with a 100-count indictment alleging multiple complex financial crimes, the warrant here is more analogous to the particularized warrant in American Investors.  Accordingly, Dougherty has not shown that the warrant is so facially deficient that it could not have been relied on by a reasonably well-trained officer.

2.   Probable Cause

Dougherty next argues that the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in the existence of probable cause unreasonable. Specifically, Dougherty argues that the affidavit only shows

---

[5]     The affidavit alleges that Dougherty made improper payments to a union official; that union official is referred to in the affidavit as the business manager of IBEW Local 98.

[6]     Dougherty cites two additional cases, both inapposite. See Klitzman, Klitzman & Gallagher v. Kurt, 744 F.2d 955, 959 (3d Cir. 1984) ("Little doubt . . . exists that the warrants issued were sufficiently particular."); United States v. Kow, 58 F.3d 423, 427 (9th Cir. 1995) (warrant contained "no limitations on which documents within each category could be seized").

-13-

probable cause that business records and similar materials would be found in the basement of the house, which housed the business office of Dougherty Electric, not on the remaining floors of the building.

The Court must examine only the facts that were before the Magistrate Judge, i.e., the affidavit, and give "great deference" to the Magistrate Judge's determination of probable cause.  Hodge, 246 F.3d at 305 ("The Court need not determine whether probable cause actually existed, but only whether there was a substantial basis for finding probable cause." (quotations omitted)).  "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."  Id. (quotation omitted).

The Magistrate Judge need not have based her finding on "direct evidence linking the place to be searched to the crime":

> Instead, probable cause can be, and often is, inferred
> by considering the type of crime, the nature of the
> items sought, the suspect's opportunity for concealment
> and normal inferences about where a criminal might hide
> the fruits of his crime.  A court is entitled to draw
> reasonable inferences about where evidence is likely to
> be kept, based on the nature of the evidence and the
> type of offense.

Id. at 305-06.

Here, Special Agent O'Hanlon's affidavit contained ample indicia of probable cause.  First, the affidavit referred to direct evidence of a nexus between 123 Pierce Street and the cash-payroll scheme: surveillance of a Dougherty Electric

-14-

employee withdrawing a large quantity of cash from a monitored
bank account and entering the "residence" of Dougherty.
Affidavit ¶ 15.  From this description, it is reasonable to infer
that the money that was taken into Dougherty's residence could
have been located anywhere in the residence.[7]

The affidavit does state that a cooperating witness
indicated that Dougherty Electric was "operating . . . out of the
basement of his residence."  Affidavit ¶ 6.  It also provides,
however, that a confidential informant, who has always been
accurate and reliable, stated more generally that Dougherty "is
operating his business from his home."  Id.  Moreover, there is
no indication that Dougherty's personal income tax files would be
located only in the basement office, and it is highly implausible
that all evidence of the home improvements and personal goods
alleged to have been improperly deducted as business expenses was
located in the basement.  See id. ¶ 29 (listing payments made
from Dougherty Electric's bank account to a health club, a
jewelry store, a plastic surgery center, a daycare center, and
swimming pool builder); id. ¶ 37 (listing cancelled checks
indicating payments to a furniture store, an electronics
retailer, and a fine clothing store, among others).

In addition to these direct links between Dougherty's

_____

[7]    Put differently, it is unreasonable to infer from the
language of the affidavit that the money could only have been
located in the basement of the residence.

-15-

home and the evidence of the alleged crimes, the affidavit relied
on several inferences, all of which were reasonable.  Dougherty
was the sole owner of an S Corporation,[8] which allegedly operated
out of his basement and/or home.  From these facts, it is
reasonable to infer that many of Dougherty Electric's business
records and account books, items which were the subject of the
allegedly improper deductions by Dougherty, and receipts and
other business records of Dougherty will likely be found not only
in the basement, but also in other parts of the residence as
well.  Id. ¶¶ 4, 45-46.[9]

        Finally, Dougherty argues that the affidavit is based
in part on stale evidence.  However, if the suspected activity
"is of a protracted and continuous nature the passage of time

---

[8]     Dougherty Electric's status as an S Corporation is
relevant because the corporation's compliance with the Internal
Revenue Code will be evidenced by the Forms 1040 of its
individual shareholders, here, Dougherty.  See supra note 2.

[9]     Dougherty argues generally that a higher "level of
justification" is required when conducting a search of a home.
For this proposition, Dougherty relies on United States v.
Mosley, which states only that "[t]he level of justification
required to support a valid car search is extremely low . . . as
compared with that required to support a valid home search.").
454 F.3d 249, 269 (3d Cir. 2006).  The teachings of Mosely are
not instructive here.  See id. (case concerned a vehicle search,
not a home search).  Dougherty has a reasonable expectation of
privacy in his residence, even if he does use it as a home-
office.  See United States v. Bli, 147 F. Supp. 2d 734, 741 (E.D.
Mich. 2001) (holding that defendant had a reasonable expectation
of privacy in his farm's business office, which was located on
the same premises as his residence).  Although this expectation
of privacy is a prerequisite to Fourth Amendment protection, it
does not heighten the probable cause requirement.

-16-

becomes less significant," and "where the items to be seized are created for the purpose of preservation, as are business records, the passage of time is also less significant." $92,422.57, 307 F.3d at 148.  Here, the alleged criminal activity is ongoing in nature and many of the items to be seized are not of a transient nature and were created in order to be preserved.

Accordingly, the Magistrate Judge had a substantial basis for determining probable cause in this case.

## III. EXCEEDING THE SCOPE OF THE WARRANT

Dougherty claims that the agents conducting the search exceeded the scope of the warrant.  Dougherty argues that the search warrant and its accompanying affidavit only authorized a search of his basement, not his entire house.  Therefore, Dougherty contends that the search, which ranged extensively throughout his home, exceeded the scope of the warrant.

Evidence seized pursuant to a search that exceeds the scope of an otherwise valid warrant is subject to the exclusionary rule.  See United States v. Coleman, 805 F.2d 474, 483 (3d Cir. 1986) ("To the extent material outside the list was seized, the district court properly determined that that material could be suppressed without requiring the suppression of all documents seized.").

The Third Circuit has applied the good faith exception

to the exclusionary rule to searches that exceed the scope of a warrant:

> To show a deliberate disregard for the warrant's restrictions, it must be demonstrated that a reasonably well-trained officer would have known that the search was illegal, despite the magistrate's authorization. This is a question of objective reasonableness, rather than subjective good faith.

Am. Investors, 879 F.2d at 1107 (citing Leon, 468 U.S. at 919 n. 20). Therefore, as with the particularity requirement discussed above, "the pertinent inquiry is still whether the officers acted reasonably. Phrased another way, we ask whether the officers' suspicions have been aroused that certain documents could not be seized under the warrant." Id. at 1107.

Unlike the particularity determination, however, the determination of whether the search exceeded the scope of the warrant requires consideration of evidence outside the four corners of the warrant and affidavit. See United States v. Fumo, No. 06-319, 2007 WL 3232112, at *5 (E.D. Pa. Oct. 30, 2007) ("[I]f the seizure exceeded the scope of the warrant, this will be apparent when the evidence offered is compared to the description on the face of the warrant of items to be seized and when defense counsel questions the proponent of the evidence about the circumstances of its seizure."). The determination is an objective one, however, and the subjective intent and knowledge of the agents executing the warrant is immaterial. See Am. Investors, 879 F.2d at 1107.

-18-

Dougherty argues that the warrant only authorized a search of the basement of 123 Pierce Street, and not the remainder of the home.  This contention is belied by the warrant, which describes the premises to be searched in detail:

> 123 Pierce Street, Philadelphia PA 19148, is a brick residence, located on the north side of Pierce Street across [sic], at the cross street of Moore Street.  The structure is a three story red brick home with a brick wall encompassing the yard, and a sunken two car garage with wooden garage doors.

Affidavit, Attachment A.  Nowhere in this description is the scope of the search limited to the basement of Dougherty's home.

Dougherty relies on two cases, both of which undercut his argument.  See Torres v. United States, 200 F.3d 179 (3d Cir. 1999); United States v. Am. Investors of Pittsburgh, Inc., 879 F.2d 1087 (3d Cir. 1989).

In Torres, federal agents searched the home of the defendant, who was suspected of drug trafficking, pursuant to a warrant.  200 F.3d at 181.  The warrant authorized a search of "the property known as 3936 N. 5th Street, Philadelphia, PA." Id. at 187.  The affidavit accompanying the warrant stated that the defendant "stored cocaine in five-gallon cans in the basement of the premises," but also "recited other items the location of which were not expressly limited to any particular portion of the building."  Id.  The defendant challenged the search as having exceeded the scope of the warrant, but the Third Circuit disagreed.  The Court reasoned that "a warrant encompasses the

-19-

authority to search the entire building if the person who is the target of the search has access to or control over the entire premises." Id. at 187 (quotation omitted). Because the premises in question was "a traditional two-story home," and not a "multi-unit premises with separate areas controlled by separate residents," the Court concluded that "the warrant authorized a search of the entire building." Id. at 187-88.

In American Investors, federal agents conducted a search, pursuant to a warrant, of the offices of a business suspected of money laundering. 879 F.2d at 1092-93. The warrant authorized the search of 23 categories of records and the seizure of documents and fruits, instrumentalities, and evidence of criminal activity. Id. at 1093. The ten-hour search undertaken by the agents was extensive, resulting in the seizure of large amounts of corporate documents and interrogation of individual employees. Id. at 1091, 1104. Rejecting the defendants' argument that the search exceeded the scope of the warrant, the Court held that, "[g]iven the necessarily broad scope of the search involved" in the investigation of a complex money-laundering scheme, "the agents reasonably relied on the magistrate's findings that the affidavit justified the seizure of the wide range of documents." Id. at 1107.

This case closely resembles both Torres and American Investors. The warrant authorized a search of "123 Pierce

-20-

Street, Philadelphia, PA 19148," a traditional single-family residence over which Dougherty had control.  Although the affidavit stated that Dougherty's business was located in the basement of the premises, it also stated more generally that the business was run out of Dougherty's "home," and alleged that other evidence, such as items which were the subject of the allegedly improper deductions by Dougherty, and receipts and other business records of Dougherty, might be found in other parts of the residence.  See Torres, 200 F.3d at 187-88.  In addition, the warrant in this case authorized an extensive search of over 30 categories of documents and items as part of an investigation of a series of complex financial crimes.  See Am. Investors, 879 F.2d at 1107.[10]

---

[10]    A handwritten addition to the affidavit added at the instruction of the Magistrate Judge provides: "If personal materials or information are obtained during the search, the government will not review any materials or information which will or would infringe upon the privacy of [Dougherty, his wife, or others]."  Affidavit ¶ 52(d).  Dougherty contends that this addition indicates the Magistrate Judge's intent to restrict the scope of the authorized search to business records only.  The remainder of the affidavit suggests otherwise.  The handwritten addendum is part of paragraph 52, which pertains specifically to "information contained in a computer . . . [that] cannot be successfully retrieved and copied to depict the exact environment in which the data was created at the premises."  Id. ¶ 52.  The restriction in paragraph 52(d) thus concerns only private information contained on seized computers and is consistent with other portions of the warrant that expressly authorize seizure of personal items.  See, e.g., Affidavit, Attachment B, ¶¶ L ("All individual . . . bank account records . . . ."), Q ("All records relative to the expenditure of any funds, business or personal, for the personal benefit of [Dougherty] or his family.").

Moreover, the testimony of Special Agent O'Hanlon at the hearing did not support Dougherty's claim that the search of 123 Pierce Street exceeded the scope of the warrant. Special Agent O'Hanlon testified that the search ranged into private places such as closets, jewelry boxes, drawers, inside kitchen cabinets, and underneath countertops. Searches of these locations was likely to reveal the fine clothes, jewelry, and home improvements that were the subject of the improper deductions alleged in the probable cause affidavit. In addition, searches of these locations were likely to uncover business records, such as the receipts that reflected the purchases of these items and others similar to them. For example, as discussed above, see supra Part I.B, Special Agent O'Hanlon's testimony revealed that a private office was found adjacent to Dougherty's master bedroom, which contained business records of Dougherty Electric. Thus, the Court cannot say that an agent who searched these locations on the strength of the January 27, 2006 warrant was acting unreasonably.[11]

---

[11] At the hearing, the Government elected to defend the execution of the warrant based on the agents' good faith reliance on the warrant. In fact, the Government's argument understates its case. The evidence introduced at the hearing shows not only that the agents reasonably relied on the warrant, but also that the agents' search did not exceed the scope of the warrant.

IV.   CONCLUSION

The January 27, 2006 warrant was neither facially deficient in its particularization of the items to be seized, nor fatally lacking in indicia of probable cause.  Moreover, the agents acted reasonably in executing the warrant.  Accordingly, Defendant's motion to suppress (doc. no. 24) will be denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :     CRIMINAL ACTION
                             :     NO. 07-361
        v.                   :
                             :
DONALD DOUGHERTY             :

**FILED**

APR 03 2008

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**O R D E R**

**AND NOW,** this **2nd** day of **April, 2008,** for the reasons
stated in the accompanying Memorandum, it is hereby **ORDERED** that
Defendant's motion to suppress (doc. no. 24) is **DENIED.**

**AND IT IS SO ORDERED.**

_____
EDUARDO C. ROBRENO, J.

**ENTERED**

APR 03 2008

**CLERK OF COURT**