IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NO. 07-361 |
| : | |
| DONALD DOUGHERTY, JR. : | |

**M E M O R A N D U M**

PRATTER, J.                                                                                              DECEMBER 30, 2008

After pleading guilty to nearly one hundred counts of fraud, theft, bribery, and tax evasion, Donald Dougherty, Jr. appeared before the Court for sentencing. The Government argued that Mr. Dougherty's crimes belong in three separate groups for Sentencing Guidelines purposes, while Mr. Dougherty argued for one or, at most, two groups.[1] A sentencing hearing was held on December 17, 2008. Based on the factors discussed below, the Court grouped the counts into two groups.

**FACTUAL BACKGROUND**

Donald Dougherty, Jr. was the owner, president, and sole shareholder of Dougherty Electric, Inc. ("DEI"), an electrical contracting business. DEI was responsible for reporting monthly payroll to IBEW, the electrician's union, and for making contributions to employee welfare benefit and pension plans based on that monthly payroll. Mr. Dougherty, however, kept two payrolls. One tracked the checks paid out to union employees and reflected the amounts

---

[1] Grouping Mr. Dougherty's crimes into one group as opposed to three groups reduces the Sentencing Guidelines range from 41-51 months for three groups to 30-37 months for one group. See Gov't's Sentencing Memo. at 13. Using two groups, the range is 33-41 months. See Dougherty's Rep. to Gov't's Amended Sentencing Memo. at 4 n.2.

1

reported to IBEW each month. These amounts were also used to calculate DEI's contributions to the IBEW benefit and pension plans. The other payroll tracked the amount of cash paid to union workers for various jobs, and this payroll was not reported to IBEW. Through this system, DEI avoided the payment of approximately $1,067,534 in employer contributions from January 2001 to October 2005.[2]

Mr. Dougherty's dual bookkeeping also had tax consequences. When Mr. Dougherty paid various employees (including himself) in cash rather than through the normal payroll system, he did not report those cash amounts to the Internal Revenue Service, and he did not withhold federal payroll taxes for those amounts. Mr. Dougherty also made other omissions and false statements on his tax returns, including failing to report income, both from the cash payroll as well as union payments received pursuant to collective bargaining agreements; and reporting personal expenses, such as the purchase and repair of personal property, a $16,000 Rolex watch, clothing, and daycare, as business expenses.

Mr. Dougherty also bribed a union official by completing work on the official's home at no cost. He assisted the same union official in fraudulently putting the union president's niece on DEI's health insurance policy. Mr. Dougherty similarly bribed a bank vice president by performing free work and giving gifts, like Super Bowl tickets and accommodations, in order to obtain financing.

Mr. Dougherty pleaded guilty to 38 counts of ERISA fraud, 38 counts of theft of employee benefit plans, bribery of a union official, health care fraud, bank bribery, 17 counts of

---

[2] Only conduct dating back to August 2002 was charged in this prosecution, however, so the loss at issue was calculated as $869,599.

tax evasion (all regarding the avoidance of payroll taxes), and 3 counts of filing false and fraudulent tax returns.

With regard to Mr. Dougherty's sentence for his crimes, the Government and the Defendant disagreed about how the offenses should be grouped. The Government advocated three groupings: the ERISA offenses (counts 1-76), the tax offenses (counts 81-100), and the remaining "personal action" counts (counts 78-80, involving bribery). Mr. Dougherty argued that all of the offenses should be in one group, or that at the very least, all but the bribery charges should be grouped together.

**LEGAL STANDARD**

"Grouping" is primarily addressed in Sentencing Guideline § 3D1.2:

(1) All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:

(a) When counts involve the same victim and the same act or transaction.

(b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

(c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

(d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S.S.G. § 3D1.2. The Guidelines list various offenses that are eligible for grouping under subsection (d), and each of the counts here appears on that list. The notes to the Guidelines state that subsection (d) applies when the counts are of the "same general type," and that "same

general type" is to be broadly construed.  See U.S.S.G. § 3D1.2 Application Note 6.  The Third Circuit Court of Appeals has advised that "courts must distinguish between occasions when increasing the punishment for an additional count would punish the defendant for conduct taken into account in another count and those occasions when the added counts reflect additional criminal culpability."  U.S. v. Rudolph, 137 F.3d 173, 180 (3d Cir. 1998) (internal quotation omitted).

The Guidelines provide some examples of situations in which subsection (d) would apply.  The most germane example is the following: "The defendant is convicted of five counts of mail fraud and ten counts of wire fraud.  Although the counts arise from various schemes, each involves a monetary objective.  All fifteen counts are to be grouped together."  U.S.S.G. § 3D1.2 Application Note 6.   None of the examples deal with the grouping of tax offenses with non-tax offenses.  The only example in which the Guidelines say that counts should not be grouped involves robbery, which is an offense that is specifically listed as one that is not eligible for grouping.  See id.

**DISCUSSION**

Mr. Dougherty argued that all of his offenses should be grouped under § 3D1.2(d) because his offenses involve substantially the same harm, the offense levels are determined largely on the basis of the total amount of harm or loss, and the offenses are of the same general type.  The Government countered that the offenses involve different victims and different Guidelines, and are not of the same general type.

As an initial matter, the Guidelines themselves and accompanying notes suggest that the different victim and different guideline issues are not in and of themselves dispositive.  While §§

3D1.2(a) and 3D1.2(b) require that the victim be the same for offenses to be grouped under those subsections, § 3D1.2(d) does not specify that the same victim must be involved, which implies that such a requirement was not intended. As to different offense Guidelines, the application notes to § 3D1.2 state that, "Counts involving offenses to which different offense guidelines apply are grouped together under subsection (d) if the offenses are of the same general type and otherwise meet the criteria for grouping under this subsection," which means that the fact that different Guidelines apply to the different offenses should not necessarily lead to the counts not being grouped, provided the counts are of the same general type.[3] See id. Application Note 6. To the extent that the difference in victims and Guidelines inform the analysis of whether the offenses are of the same general type, those factors are relevant.

As mentioned, neither party cites an appellate decision from this Circuit that is precisely on point. Arguably, the closest cases weigh slightly in favor of the Government's position here. For instance, the Government cites U.S. v. Seligsohn, 981 F.2d 1418 (3d Cir. 1992). In that case, the defendants were being sentenced for numerous counts of mail fraud, labor bribery, obstruction of justice, racketeering, submitting false employee benefit plan remittance reports,

---

[3] Some courts have cited different offense Guidelines/tables as a reason for not grouping offenses. See, e.g., U.S. v. Shevi, 345 F.3d 675, 681 (8th Cir. 2003). They find that the variance in offense levels demonstrates that the offenses cannot be of the same general type. Mr. Dougherty, however, notes that the loss tables for tax and fraud add up to the same offense level in this case. While this is true for the amounts involved in this case, it is not true for all amounts. For instance, if the loss was $4,000, the offense level under the tax table would be 8, while under the fraud table it would be 6. The fact that the application notes to the Guidelines regarding grouping contemplate different offense levels seems to suggest that this was not meant to be a factor in grouping decisions, or at least not the only factor. Neither party has cited any Third Circuit appellate decision on this precise point, nor has the Court's research revealed any such case.

and submitting false tax returns. The district court grouped the offenses into three groups–mail fraud, bribery, and tax evasion.[4] The Third Circuit Court of Appeals upheld the grouping, noting the application of the clear error standard of review. On the other hand, helpful for Mr. Dougherty is the appellate court's reasoning that the tax evasion counts in Seligsohn "differed in nature and were not an essential part of or *related to* the mail fraud." Id. at 1425 (emphasis added).[5] Here, however, Mr. Dougherty's ERISA and tax offenses were arguably related to each other, and at least some of the tax offenses could be considered essential to the ERISA offenses, in that the failure to report the cash payroll for tax purposes helped Mr. Dougherty to cover up his failure to report the cash payroll for benefit purposes, or vice versa.

Certain of the other Third Circuit Court of Appeals decisions cited by the parties are further afield. For example, in U.S. v. Vitale, 159 F.3d 810 (3d Cir. 1998), the court held that the district court had properly refused to group wire fraud and tax evasion offenses; however, that case was decided under § 3D1.2(c), not § 3D1.2(d), and the court of appeals itself has distinguished it on this basis. See, e.g., U.S. v. Corbett, 44 Fed. Appx. 563, 568 (3d Cir 2002)

---

[4] Since there were more than three different offenses charged in Seligsohn, it is not clear which offenses fell into which grouping. Because no group is called the "false benefit plan submission" group, it would seem that those offenses were grouped with either mail fraud, bribery, or tax evasion. So even though the Court of Appeals did not overturn the district court's grouping in favor of one big group, this case may imply that Mr. Dougherty's false benefit plan submissions in this case should be grouped with at least one other set of offenses. Unfortunately, it is impossible to tell which grouping the Seligsohn court approved. If those offenses were grouped with bribery or tax fraud, then that favors the defense position here. If they were grouped with mail fraud, then the case does not help the defendant. Given that in that case the mail fraud was a scheme aimed at misleading potential customers, see Seligsohn, 981 F.2d at 1420, it seems likely that the ERISA counts were grouped with either bribery or tax counts.

[5] In that case, the mail fraud had little to do with the tax evasion–the mail fraud involved sending misleading and false information to potential customers, whereas the tax evasion had to do with a payroll scam. See Seligsohn, 981 F.2d at 1420.

(remanding case when district court refused to group tax evasion with mail and wire fraud and all of the counts were part of a common scheme, holding that the district court erred when it failed to consider that the Vitale case was limited to § 3D1.2(c) and that it must consider the appropriateness of grouping the counts under the other sections of 3D1.2).  See also U.S. v. Astorri, 923 F.2d 1052, 1057 (3d Cir. 1991) (upholding district court's refusal to group tax evasion and fraud under § 3D1.2(c), but failing to mention the possibility of grouping under § 3D1.2(d)).  In U.S. v. Rzeplinski, 278 Fed. Appx. 156 (3d Cir. 2008), cited by the Government, the district court's refusal to group tax evasion and false claims offenses under § 3D1.2(d) was upheld on appeal.  However, in that case, the defendant's false claims and tax evasion were not part of a common criminal objective or the same scheme or plan–his false claims were meant to cheat the Army out of money, while his tax offenses were designed to hide income from his estranged wife to avoid alimony obligations.  Id. at 159.

A few district court cases in this Circuit are instructive, although likewise distinguishable.  In U.S. v. Arnold, 984 F. Supp. 326 (E.D. Pa. 1997), the court refused to group bank larceny and money laundering counts because grouping under § 3D1.2(d) requires a "significant factual link between Defendant's offenses," which was not found in that case.  Id. at 334.  In U.S. v. Maiorano, No. Crim. 98-58, 1999 WL 391278, at *2 (E.D. Pa. May 3, 1999), the defendant was convicted of a number of offenses involving stolen checks, money laundering, and tax evasion (intended to hide the other offenses), and argued that her counsel was ineffective for, among other reasons, failing to object to the court's refusal to group the tax evasion counts with the other counts.  The court held that it had properly followed § 3D1.2(d) in refusing to group the counts because evading taxes "does not involve substantially the same harm as laundering money

7

and transporting stolen checks," and does not involve the same victims. However, that court cited Astorri in support of its position–a case which the court of appeals has elsewhere noted is limited to the application of § 3D1.2(c). See Corbett, 44 Fed. Appx. at 568.

Finding no compelling clarity from our Circuit, it is not inappropriate for the Court to at least look for possible guidance elsewhere. Other circuits differ in their approach to grouping tax offenses with fraud offenses. The Second Circuit routinely allows such grouping. See, e.g., U.S. v. Fitzgerald, 232 F.3d 315, 319-20 (2d Cir. 2000) (grouping tax evasion, fraud, and conversion under § 3D1.2(d), noting that the offense level tables for each are similar, and use the same monetary division points, despite starting at different base offense levels)[6]; U.S. v. Barbera, No. 02 CR 1268(RWS), 2005 WL 2709112, at * 4 (S.D.N.Y. Oct. 21, 2005) (grouping, without much substantive discussion, various tax, fraud, and theft charges; the conduct in that case was all part of a scheme to defraud the government and a union by claiming that an individual associated with the mafia was an employee when he did not, in fact, perform any work).

At least one district court in the Eleventh Circuit has grouped tax evasion and various forms of fraud. See U.S. v. Lamonda, No. 6:05-cr-131-Orl-28UAM, 2008 WL 68744, at *8 (M.D. Fla. Jan. 2, 2008). In Lamonda, the court noted that one of the examples in an earlier version of the Guidelines of counts that could be grouped properly was "larceny, embezzlement, forgery, and fraud." Id. at *7. The court reasoned that based on this example, the fact that offenses are not classified as the same type elsewhere in the Guidelines, share no one formal

---

[6] The tables have changed since the Fitzgerald case was decided. Now, the tables for tax (U.S.S.G. § 2T4.1) and fraud/bribery (U.S.S.G. § 2B1.1) differ in the monetary divisions, at least until the amount of loss reaches $200,000, although they did not in 2000, when the Fitzgerald case was decided.

element, and have different loss-to-offense ratios does not preclude offenses from being grouped. The court rejected the Government's "different victim" argument, noting the lack of a requirement under § 3D1.2(d) of the same victim. Id. at *8. Finally, the court noted that tax evasion is an attempt to defraud the government and that "tax fraud" and "tax evasion" are commonly used synonymously, making tax evasion of the "same general type" as fraud offenses. Id.

On the other hand, the First, Sixth, Eighth, and Tenth Circuits have held that fraud and tax counts should not be grouped under § 3D1.2(d) because of the differences in the nature and measure of harm, even when the tax counts were based on a failure to report fraudulently gained income charged in other counts. See, e.g., U.S. v. Martin, 363 F.3d 25, 44 (1st Cir. 2004) (tax and fraud counts should not be grouped under § 3D1.2(d) because they cause different harms to different victims and require different conduct, because the offense levels for the charges involve different increments which reflect the different nature of the offenses, and because such a grouping would allow the defendant to avoid punishment for his tax evasion offenses); Weinberger v. U.S., 268 F.3d 346, 354-55 (6th Cir. 2001) (refusing to group tax evasion and fraud because the charges "consist[] of different elements, affect[] different victims, and involve[] different criminal conduct" and because grouping the counts would allow the defendant to go unpunished for his tax evasion); Shevi, 345 F.3d at 681; U.S. v. Lindsey, 184 F.3d 1138, 1142-43 (10th Cir. 1999) (refusing to group counts because tax and fraud counts do not involve the same harm).

Thus, courts are divided as to whether to group tax counts with fraud counts for purposes of calculating proper, or arguably proper, Guidelines applications. As to grouping bribery counts

with tax or fraud counts, few courts have spoken to this issue.  This particular case involving Mr. Dougherty could be decided several different ways, and each would have some logic underpinning the decision.

The Government's position that there should be three separate groups–ERISA, bribery, and tax–seems to fit with the reasoning of several of the cases discussed above.   These offenses arguably involve different harms, and the bribery counts are not directly related factually to the cash payroll scheme.  In addition, the Government's position ensures punishment for all categories of offenses, which is a factor that many courts seem to find compelling.  On the other hand, the Third Circuit Court of Appeals has more than hinted that factually related offenses should be grouped, see Seligsohn, 981 F.2d at 1425, and here the tax evasion and ERISA fraud counts are factually related as part of a common cash payroll scheme.

The Defendant's position that all of the counts should be grouped together is supported by the fact that the counts generally involve fraudulent conduct with monetary motives, and are therefore arguably of the "same general type."  This is consistent with the Guidelines example that provides that even if mail and wire fraud counts involve multiple schemes, they are to be grouped as the same general type because of their common monetary motive.  This potential grouping, however, raises the oft-cited concerns of many courts that Mr. Dougherty would avoid punishment for his separate offenses, and it certainly seems to so stretch the definition of "same general type" beyond the intentions of the Guidelines or at least beyond the interpretations of many courts as to cause the concept to essentially lose any useful definition at all.  Grouping counts on the basis of a "monetary motive" is too broad a basis to usefully employ, not to mention that such a grouping includes the bribery offenses, which are not factually related to the

10

other offenses (i.e., the cash payroll scheme offenses).

Mr. Dougherty also proposed a compromise position–grouping the ERISA and tax counts while leaving the bribery counts separate. Such a grouping accounts for the common payroll scheme underlying the ERISA and tax offenses, and thus makes intuitive sense. It ensures that Mr. Dougherty is punished for his cash payroll scheme *and* for his other, unrelated offenses.

Overall, the case law on this issue is inconsistent. Prior judicial decisions often conflate the different sections of 3D1.2 by using cases applying one subsection to support denial of grouping under another subsection. In addition, courts also appear to refer to a difference in victims in order to find a difference in type of harm. While the Guidelines do not offer definitive clarity on this issue, some courts demonstrate particular resistance to grouping, so much so that they risk contorting the plain meaning of the Guidelines. Here, the Court finds it logical to group at least all of the counts involving the same factual scheme used by Mr. Dougherty and motivated by the same goal–defrauding others to make or at least save money. Thus, the Defendant's positions make the most logical sense. No case law in the Third Circuit prohibits this result, although the Court recognizes that no cases provide direct support for this approach, either. What is clear to the Court from Third Circuit case law is that our appellate court expects the sentencing court to make sure that a defendant is punished for all of his offenses. In this case, the Court concludes that both the appellate court's expressed concerns about making sure a defendant is punished for all offenses and the compelling application of logic (as well as the background of this case as involving references to this matter as a "single scheme," see, e.g., Gov't Severance Resp. at 6, 11, 12) can be served by grouping the tax-related and ERISA-related counts as one group and the so-called bribery counts as another group.

**CONCLUSION**

For the foregoing reasons, the Court has grouped Mr. Dougherty's offenses into two groups for sentencing purposes–one encompassing counts 1-76 and 81-100 and one encompassing counts 78-80. An Order reflecting this conclusion follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NO. 07-361 |
| : | |
| DONALD DOUGHERTY, JR. : | |

**O R D E R**

**AND NOW**, this 30th day of December, 2008, as reflected by the Court's oral rulings in connection with the sentencing hearing which took place on December 17, 2008, **IT IS ORDERED** that Mr. Dougherty's offenses shall be grouped into two groups under U.S.S.G. § 3D1.2(d): (1) counts 1-76 and 81-100 and (2) counts 78-80.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge