IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 07-CR-0361-1 |
| | : | |
| v. | : | |
| | : | *In re* PETITION OF |
| DONALD DOUGHERTY, JR. | : | JOHN J. DOUGHERTY |

**M E M O R A N D U M**

PRATTER, J.                                                                                                   JULY 23, 2014

Like a feline with escapist tendencies, this dispute has inspired many metaphors. Bells have rung, dogs barked, horses bolted from barns, and cats scurried out of bags and up trees. Toothpaste has been irreversibly evicted from its tubular abode and the egg scrambled. A document supposed to have been seen by just a few has now been blasted into cyberspace where, we know, nothing ever dies.

The dispute concerns an FBI Affidavit and Search Warrant of Probable Cause, signed by United States Magistrate Judge Thomas J. Rueter on November 9, 2006 (collectively, "FBI Affidavit"), sealed in the court's files (*United States of America v. Certain Premises*, No. 06-1129M (E.D. Pa.)), and delivered by copy to Assistant United States Attorney Anita Eve. The secret FBI Affidavit, filed under seal pursuant to Eastern District of Pennsylvania Local Rule of Criminal Procedure 6.1(c) to promote the "government's interest in protecting cooperating witnesses and ongoing criminal investigations, and the [privacy] right [and presumption of innocence] of individuals named in the materials who have not been charged with any offense," Nov. 9, 2006 Order 1-2 (Docket No. 153), permitted the federal government to search the home of John J. Dougherty.

1

While it was investigating John Dougherty, the Government was simultaneously investigating the presumably related case of Donald Dougherty, Jr. (no biological relation). This nominal similarity, one imagines, is why, on January 30, 2008, the Government accidentally filed the FBI Affidavit in question here in the ongoing case of *United States v. Donald Dougherty, Jr.*, No. 07-cr-0361 (E.D. Pa.) (this case), as an exhibit to Document Number 27. (Of course, the Government meant to file *Donald Dougherty's* relevant affidavit and search warrant as the exhibit to Document Number 27 instead.) John Dougherty's FBI Affidavit thereafter remained on the publicly accessible docket (PACER) and in the Court's public file until December 17, 2012, when the Assistant United States Attorneys ("AUSAs") on the Donald Dougherty case realized the unintentional mistake and successfully asked the Court to return the erroneous Dougherty entry to the Government's possession. (The AUSAs did not request a seal or protective order.) *See* Dec. 17, 2012 Order (Docket No. 134). After December 17, 2012, the only federal copy of the FBI Affidavit was, of course, the original, sealed and impounded as it was in *United States of America v. Certain Premises*, No. 06-1129M.[1]

On March 23, 2011, John Dougherty filed the complaint in his defamation suit against the *Inquirer* Defendants[2] in the Philadelphia County Court of Common Pleas. While the FBI Affidavit was still available on the federal docket in the Donald Dougherty case, one of the *Inquirer* Defendants' attorneys downloaded it and subsequently attached it, on December 10, 2012, to a motion for summary judgment in John Dougherty' case in state court against the

---

[1] In April 2008, Judge Robreno (who was then presiding over *United States v. Donald Dougherty, Jr.*) ruled that other documents mentioning or discussing John Dougherty (because the investigations were related) should not have been filed under seal, but he never addressed the FBI Affidavit. *See* Apr. 11, 2008 Order (Docket No. 60).

[2] Philadelphia Newspapers, LLC, Harold Jackson, David Boyer, Russell Cooke, Melanie Burney, Tony Auth, and Monica Yant Kinney.

*Inquirer* Defendants. On January 2, 2013, acting upon John Dougherty's December 31, 2012 motion, the state court provisionally sealed the FBI Affidavit then in its possession.

On April 28, 2014, the state court found, among other things, "that all of Defendants' challenged publications express opinions based on disclosed and undisputed public facts" because "[a]t the time the editorials and opinion column were published, it was a matter of public record that the federal government had commenced an active federal criminal investigation involving allegedly illegal financial transactions between [John Dougherty] and his childhood friend, electrical contractor Donald Dougherty." Apr. 28, 2014 State Court Merits Order 2-4 n.1 (Docket No. 139-8; Docket No. 147-17). Citing the FBI Affidavit, the state court granted the *Inquirer* Defendants' motion for summary judgment. *Id.* That same day, the state court also ordered that the FBI Affidavit be unsealed on its own docket. Apr. 28, 2014 State Court Unsealing Order (Docket No. 139-10; 147-18). The court reasoned, inter alia, (1) that the FBI Affidavit "was publicly available for approximately 5 years" on the federal, i.e., Donald Dougherty case, docket; (2) perhaps mistakenly,[3] that "[a] federal judge [Judge Robreno] denied the request to seal the [FBI] Affidavit"; (3) that "once the government has released information through a court filing, properly or not, it is a matter of public record fit for use in future court filings" (citing *The Fla. Star v. B.J.F.*, 491 U.S. 524, 536 (1989); *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 567-68 (1976)); and (4) that this Court, on December 17, 2012, "agreed to the substitution and [the FBI Affidavit's] being removed from the federal court filings . . . but . . . did not order that it be sealed." Apr. 28, 2014 State Court Unsealing Order 1 n.1.

---

[3] In other words, the state court may have been mistaken that Judge Robreno denied a request to seal the FBI Affidavit because, as noted, Judge Robreno did not rule on the FBI Affidavit in his April 11, 2008 Order. *See supra* note 1. But whether the state court misperceived Judge Robreno's ruling(s) is, for the reasons set out below, in fact legally unimportant.

3

John Dougherty moved for reconsideration of the state court unsealing order on April 29, 2014. The state court quickly denied the motion for reconsideration on May 5, 2014. May 5, 2014 State Court Order & Opinion (Docket No. 139-9; 147-20). John Dougherty did not appeal the state court's unsealing ruling, although he has appealed the state court's summary judgment ruling on the merits.

John Dougherty filed the instant Petition in this Court on May 1, 2014. He seeks an injunction directing the Prothonotary for the Philadelphia County Court of Common Pleas to seal the FBI Affidavit in the Court of Common Pleas' files. After several hearings and opportunities for oral argument, as well as counsels' filing of a panoply of capably crafted written submissions, John Dougherty's Petition is ripe for decision.

*   *   *

From a distance, this dispute appears to raise intractable questions of federal jurisdiction and the relationship between federal and state power. Closer up, it may present an occasion for personal or professional pique,[4] but it presents nothing that established Supreme Court principles cannot comfortably resolve.[5]

---

[4] Of course, notwithstanding some erroneous views of the public and the cynicism of some elements of the press, a judge's own desired outcome is not a basis for judicial decisionmaking. Indeed, it bears observing that a judge whose decisions have never run contrary to his or her preferred result likely is not unfailingly performing his or her judicial (and, perhaps, constitutional) duty. In this case, like a number of others, if all that was at issue was to ascertain what the Court "wanted," this case might well only be a search for the mythical "Reset" button of slogan fame so that the FBI Affidavit would not have seen the light of day as had been initially intended. But that "Reset" button is as much a part of our reality in this case as the unicorn. Or, if a cyberspace metaphor is preferred, this case has reached the "Game Over" stage and there is no "Reload" button.

[5] Under *United States v. Smith*, 123 F.3d 140 (3d Cir. 1997), this case is arguably not moot. *See id.* at 145-46 (finding "the part of the newspapers' appeal that concerns access to the sentencing memorandum . . . moot" because "[t]he newspapers already possess the sentencing memorandum," but finding the question of "whether the district court also properly sealed the

As the Court noted earlier in this litigation, the directive that a federal clerk of court seal a document in the federal court's possession is distinct from a directive that a party not disclose a document, regardless of who also (including the court) might possess it. *See* June 6, 2014 Order 2 n.1. The Third Circuit Court of Appeals' discussion in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994), of the standard for shrouding judicially relevant documents with a veil of secrecy, and thus of different types of orders designed to ensure secrecy, does not purport to proclaim that all such orders involving secrecy have the same legal effect. Although the *Pansy* court stated that it would use "the term 'confidentiality order' . . . to denote any court order which in any way restricts access to or disclosure of any form of information or proceeding, including but not limited to 'protective orders,' 'sealing orders' and 'secrecy orders,'" *id.* at 777 n.1, the *Pansy* court was, of course, concerned with setting the (high) bar that must be met to justify keeping any material out of the public record, and not with what the particulars of any such order prohibit or authorize.

Thus, *Pansy*'s dicta—that "[i]f the [federal] Order of Confidentiality is not vacated, then the state court would be unable to order the document accessible . . . because . . . the state court would be obligated to respect the already-existing federal court Order of Confidentiality," 23 F.3d at 784, does not apply here. The confidentiality order in *Pansy* followed a settlement, for which the "agreement was never filed with the district court," and "stated that 'the terms of settlement are confidential and the parties hereby are ordered and directed to abide by the order of confidentiality.'" *Id.* at 776 (quoting the order). In *Pansy*, several newspapers simultaneously filed suit in state court and sought to intervene, by both avenues attempting to obtain access to

---

sentencing memorandum" not moot). Under the same reasoning, Mr. Dougherty does not lack standing inasmuch as an injunction directed at the state court might be proper and, therefore, his alleged injury in the form of the FBI Affidavit's availability from the state court docket redressable.

the unsubmitted settlement agreement, and the state court stayed the litigation before it pending resolution of the federal case. *Id.* at 775-77. The case presented the clear potential for a conflict between a state court that might apply Pennsylvania law requiring disclosure of public records and the federal confidentiality order prohibiting either party from disclosing the settlement agreement. *See id.* at 784. Thus, as a statement that a second tribunal cannot differently adjudge the same parties' rights and obligations with regard to each other, *Pansy*'s dicta is actually rather unremarkable. Of course, *Pansy* did not even as much as allude to what a federal court could do if a state court were subsequently to see things differently.

Here, of course, both the state court and federal courts actually had (and have) the FBI Affidavit on file.[6] This observation alone casts a cloud of doubt over John Dougherty's proposition that a seal order is broader than a nondisclosure order. In fact, the *Pansy* court itself observed that "[c]ourts have inherent power to grant orders of confidentiality over materials *not in the court file*." *Id.* at 785 (emphasis added). Sealing, by contrast, has everything to do with what *is* in a court's own file. *See also, e.g.*, *United States v. Wecht*, 484 F.3d 194, 212  (3d Cir. 2007) ("[T]he sealing order prevented direct public access to the documents while the protective order prohibited defense counsel from disseminating the information to the public."); *cf. also, e.g.*, *New York Times Co. v. United States*, 403 U.S. 713, 732-33 (1971) (Stewart, J., concurring) ("Indeed, even today where we hold that the United States has not met its burden [of justifying a prior restraint on the publication of the Pentagon Papers], the material remains sealed in court records and it is properly not discussed in today's opinions.").

---

[6] To be clear, the only federal copy is the original, kept sealed in the Clerk of Court's file in *United States of America v. Certain Premises*, No. 06-1129M. There is no longer any copy of the FBI Affidavit in this case, *United States v. Donald Dougherty, Jr.*, 07-cr-0361.

The dispositive factor, however, is what Magistrate Judge Rueter's November 9, 2006 Order actually said. That Order directed merely "that the within Search Warrant and Affidavit for Search Warrant [be] sealed and impounded until further Order of the Court," and that "[t]he Clerk of Court is directed to make no public docket entry of the sealed documents and motion and order to seal, and copies of all sealed documents should be provided only to [Assistant United States Attorney] Anita Eve." Nov. 9, 2006 Order 1. The Order says nothing about what Anita Eve, let alone anybody else, or a state court, could do with the documents. Nor did the Order attempt to incorporate Local Rule of Criminal Procedure 6.1(c) by reference, and John Dougherty has disclaimed any reliance on that Rule.

Although Magistrate Judge Rueter found that "even if a public right of access to search warrant materials exists, this right is outweighed in this case by the other interests" of the Government and Mr. Dougherty's privacy and presumption of innocence, Nov. 9, 2006 Order 1-2, the Order, in keeping with First Amendment principles, can hardly be construed as such a protective order against anyone except for the Government. *See Smith*, 123 F.3d at 155 n.17 ("Nor could the court enter an order barring parties in possession of the sentencing memorandum from passing the memorandum onto other parties. Under prior restraint law, orders prohibiting the media from publishing information already in its possession are strongly disfavored." (citing *Okla. Publ'g Co. v. District Court*, 430 U.S. 308 (1977); *Neb. Press Ass'n*, 427 U.S. 539)); *Fla. Star*, 491 U.S. at 533 ("[I]f a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." (alteration in original)

7

(quoting *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 103 (1979))[7]). In fact, the Third Circuit Court of Appeals has made this very distinction in stating that "[a]lthough the district court could not prevent the newspapers from publishing the sentencing memorandum once they came into possession of it, *the court properly prevented further government disclosures* of the putative grand jury secrets contained in the sentencing memorandum to additional parties." *Smith*, 123 F.3d at 155.

Furthermore, the word "impound" can hardly mean the same thing with regard to a document as to a car, for instance. *See also supra* note 3; *infra* note 9 ("impounded, i.e. filed under seal"). For this reason, the Court need not decide whether a federal court, at least without some specific federal statutory authorization, *could* order that no other court, state or federal, could publicly docket a given document without its prior authorization, because the November 9, 2006 Order does not purport to have this effect.

As the parties well know, the Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The latter two exceptions are closely related and "imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970); *see also, e.g.*, *Choo v. Exxon Corp.*, 486 U.S. 140, 149-50 (1988) ("[W]hen a state proceeding presents a federal issue, even a pre-emption issue, the

---

[7] And, one presumes, to show that its publication or statements of opinion based thereupon are lawful and not defamatory, it may file the document in question when attacked in court. *Cf. also generally infra* note 3.

proper course is to seek resolution of that issue by the state court."). Furthermore, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R. Co.*, 398 U.S. at 297.

Thus, for this Court to find that either exception to the Anti-Injunction Act permits an injunction here to the Prothonotary of the Court of Common Pleas to seal the FBI Affidavit, the November 9, 2006 Order would have to bear the construction that a directive to the Eastern District of Pennsylvania Clerk of Court was a directive as to the world, or to all courts (either set including the Philadelphia County Court of Common Pleas), or that the federal court purported to retain some kind of exclusive jurisdiction over who, having obtained the FBI Affidavit, could do what with it. This interpretation cannot be sustained, *see Atl. Coast Line R. Co.*, 398 U.S. at 293, 295-96—whether as a matter of plain reading or whether considered against background First Amendment principles.[8] Instead, presumably, assuming efficacious efforts at secrecy, Magistrate Judge Rueter said nothing more than that the federal court's files would be sealed.[9]

Even if Magistrate Judge Rueter's Order could somehow sustain the construction Mr. Dougherty advocates, Mr. Dougherty would be independently barred by two further doctrinal principles. The first is that the window for obtaining a federal injunction of state court

---

[8] And, foremost among these, the principle of constitutional avoidance. *See generally Ashwander v. Tenn. Valley Auth*, 297 U.S. 288, 345-48 (1936) (Brandeis, J., concurring).

[9] John Dougherty's argument that a sealed order in a sealed file does not need to, and therefore does not, prohibit disclosure precisely because the documents are all sealed, such that prohibitions on disclosure are the lesser included directives of a sealing order, wrongly ignores that such a construction is inconsistent with First Amendment principles as cited herein. (Moreover, in fact, Local Rule of Criminal Procedure 6.1(c), which provides that "[i]n order . . . to avoid inadvertent disclosures of the identity of any . . . person under investigation . . . , all motions, affidavits or other papers relative to legal proceedings relating to grand jury investigations shall be automatically impounded, i.e. filed under seal, by the Clerk of Court," E.D. Pa. Local R. Civ. P. 6.1(c), appears to recognize that "inadvertent disclosure" is the end of the matter, such that procedures must be in place to ensure that it does not occur.)

proceedings, when an exception to the Anti-Injunction Act applies, is limited to that time before the state court reaches its own judgment that *it* is not precluded from adjudicating the case, because a state court judgment itself is entitled to the "same preclusive effect . . . as another court of that State would give." *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986). There is every reason to think that another court of the Commonwealth, looking to the state court's unsealing order, would consider the judicial disclosure of the FBI Affidavit final, not only for practical purposes, but also as adjudicated for the reasons given there. (Those concerns about privity do not militate in favor of Mr. Dougherty, because the state court's order is necessarily more in the nature of an in rem holding than one in personam.[10] Judicial disclosure of the

---

[10] This is *not* to say that the historical in rem exception to the Anti-Injunction Act, often equated with the "necessary in aid of its jurisdiction" exception, applies here. *See generally Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 6419 (1977) ("[W]e acknowledged the existence of an historical exception to the Anti-Injunction Act in cases where the federal court has obtained jurisdiction over the res, prior to the state-court action."); 17A Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice and Procedure* § 4225 (3d ed. Apr. 2014). Those cases depend on the notion "that the court, whether federal or state, which first takes possession of a res withdraws the property from the reach of the other." *Toucey v. N.Y. Life Ins. Co.*, 314 U.S. 118, 134-35 (1941), *superseded by statute on other grounds, as stated in Parsons Steel*, 474 U.S. at 524.

One of the key predicates for the in rem exception is missing here. That predicate is that, though

> [t]he rank and authority of the (federal and state) courts are equal, . . . *both courts cannot possess or control the same thing at the same time*, and any attempt to do so would result in unseemly conflict. The rule, therefore, that the court first acquiring jurisdiction shall proceed without interference from a court of the other jurisdiction is a rule of right and of law based upon necessity, *and where the necessity, actual or potential, does not exist the rule does not apply*. Since that necessity does exist in actions in rem and does not exist in actions in personam, involving a question of personal liability only, the rule applies in the former but does not apply in the latter.

*Toucey*, 314 U.S. at 144-145 (quoting *Kline v. Burke Const. Co.*, 260 U.S. 226, 235 (1922) (parenthetical introduced in *Toucey*)). As alluded to elsewhere in this Memorandum, it is apparent that the FBI Affidavit is not a singular res in the sense that a parcel of real property, a vehicle, or other tangible object is a res. The FBI Affidavit lawfully exists, albeit as a copy of the original (which remains impounded in the original federal file), in the possession of the *Inquirer*

10

document is disclosure of the document regardless of the case in which it occurs. *Cf. Gelston v. Hoyt*, 16 U.S. (3 Wheat.) 246, 312-13 (1818) (Story, J.) ("[T]he very nature of proceedings in rem [is that a]ll persons having an interest in the subject matter, whether as seizing officers, or informers, or claimants, are parties or may be parties to such suits, so far as their interest extends. The decree of the court acts upon the thing in controversy, and settles the title of the property itself . . . .")). Moreover, issue preclusion would have the same effect because 28 U.S.C. § 1738, which "embodies concerns of comity and federalism," "allow[s] the States to determine, subject to the requirements of the statute and the Due Process Clause, the preclusive effect of judgments in their own courts," even when the "subsequent action involv[es] a claim within the exclusive jurisdiction of the federal courts." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380-81 (1985); *see also, e.g.*, *Commonwealth v. Holder*, 805 A.2d 499, 502-05 (Pa. 2002) (Pennsylvania collateral estoppel doctrine). And it is clear here from the state court's reasoning that it, too, did not read the November 9, 2006 Order as barring its unsealing of its own copy of the FBI Affidavit.

Second, "[t]he fact that an injunction may issue under the Anti-Injunction Act does not mean that it must issue." *Blalock Eddy Ranch v. MCI Telecomm. Corp.*, 982 F.2d 371, 375 (9th Cir. 1992) (citing *Choo*, 486 U.S. at 151). "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies," *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959), but Mr. Dougherty has made no showing that he could not have appealed the state court's adverse decision to the Pennsylvania Superior Court. Nor has

---

Defendants and anyone else who could pull it off PACER or the Internet, before or after the state court's orders. These observations are not meant to suggest that under no circumstances could a federal court enjoin a state court from ordering public disclosure of a document, but the analysis should proceed under the relitigation exception, as *Pansy*'s dicta itself seems to imply. *E.g.*, *Pansy*, 23 F.3d at 784 n.13 ("[I]t is well recognized that state courts must give full faith and credit to federal court judgments.").

11

he shown that what reputational harm he has suffered has not already been done by the constitutionally protected Internet publication of the FBI Affidavit, i.e., irrespective of the involvement of the courts.

It is unclear what Mr. Dougherty seeks to accomplish with this federal litigation. Even though the Court entertains the notion that the federal litigation is not *moot* because, in theory, the state court's copy of the FBI Affidavit might be placed under seal, *see supra* note 5, the only perceptible harm appears to be what Mr. Dougherty has called the state court's "imprimatur" on the FBI Affidavit (among other things, Mr. Dougherty says, the FBI Affidavit is stamped with some identifier by the state court). There are several answers to this contention. One is simply the question as to how and why a federal court is to be concerned with how a state court applies its "imprimatur"; second, even if the federal court might be so concerned, how, given principles of federalism, it might purport to tell the state court what to do is also unclear. A third and more pragmatic response is that if what Mr. Dougherty intends is to challenge the propriety of the state court's reliance on the FBI Affidavit to reject his defamation claim by establishing the truth of the *Inquirer* Defendants' allegedly defamatory statements, he must take that issue up with the state courts. *Cf. supra* note 7 and accompanying text.

Whatever their exact nature, Mr. Dougherty's concerns do not outweigh the federalism interests at stake here and the most reasonable construction of Magistrate Judge Rueter's Order. How the state court manages the filing of a document that John Dougherty admits may, by anyone who possesses it, be publicly disclosed, is its own prerogative, at least here, where no federal order purports to prohibit the state court from doing what it did when it did it. The irony of the state court's perhaps questionable failure to stay its decision on the disclosure of the FBI Affidavit pending this Court's examination of the issue is only deeper because, now that the state

court has ruled, this Court would, supposing actual conflict between the state court's order and the November 9, 2006 Federal Order, have to defer to the state court's resolution anyway. But there was then no such federal bar, other than perhaps general considerations of comity, to what the state court did here.

Furthermore, John Dougherty's suggestion that this Court's failure to enjoin the state court will lead to, or at least permit, rampant disrespect of federal orders is misplaced, not only because the state court did not contravene a federal order, but also because this entire litigation is the result of an accident, i.e., nonwillful conduct that cannot be deterred. Or, summed up metaphorically: the argument that this Court's ruling today will unleash a parade of horribles ignores that (1) no prior order enjoined the horribles from parading; (2) if such a valid order existed, the horribles could be held in contempt; and (3) a defamation suit against the horribles is a tempting invitation to parade indeed.

John Dougherty has argued that this is a case about federal power. To the contrary, if it is not merely a case about plain meaning, it is a case about federalism. On either account, the Court is constrained to deny the Petition.

An appropriate Order follows.

BY THE COURT:

 /s/ Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge